IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CASSIDY ALMQUIST,

                Plaintiff,

            v.

SYNERGO, LLC, an Oregon limited liability
company, SYNERGO, an Oregon corporation;
ASSOCIATION FOR CHALLENGE COURSE
TECHNOLOGY, a Delaware non-profit
corporation,

                Defendants.

Case No. 3:15-cv-01281-SB

**FINDINGS AND
RECOMMENDATION**

---

**BECKERMAN, Magistrate Judge.**

      Cassidy Almquist ("Almquist") filed an Amended Complaint against Synergo, LLC, an

Oregon limited liability company, Synergo, an Oregon corporation (collectively "Synergo"), and the

Association for Challenge Course Technology, a Delaware non-profit corporation ("ACCT"),

Page 1 - FINDINGS AND RECOMMENDATION

alleging claims for negligence. Almquist's action arises from an accident at the Bar-M-Ranch, in which she fell from a Giant Swing and was paralyzed. With respect to ACCT, Almquist alleges that ACCT was negligent (1) in promulgating standards for its certified inspectors, that allow them to certify challenge courses as safe when the inspector knows that untrained challenge course workers will operate the course, and (2) by failing to include in the inspection standards a provision directing an inspector to recommend that a course be closed until workers receive proper training. (Am. Compl. ¶¶ 16, 17 and 26.)

Synergo filed an Answer to Almquist's Amended Complaint, and ACCT filed a Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. On April 5, 2016, this Court heard oral argument on ACCT's request for dismissal. For the reasons set forth below, the district judge should deny ACCT's Rule 12(b)(2) motion.

## I. BACKGROUND

ACCT, a professional trade association for the challenge course industry, develops and publishes standards for installing, inspecting, and maintaining challenge courses. (Am. Compl. ¶¶ 24, 25.) ACCT trains and certifies professional challenge course inspectors. (Am. Compl. ¶ 25.) Synergo relied on ACCT's standards in inspecting the Giant Swing at issue in this litigation. (Am. Compl. ¶ 28.)

Synergo is in the business of, among other things, inspecting challenge courses. (Am. Compl. ¶ 8.) Synergo is located in Tigard, Oregon, and is a dues-paying member of ACCT. Synergo is the only accredited Professional Vendor Member ("PVM") of ACCT in Oregon.[1] Synergo's founder and

---

[1] According to ACCT, "[a] PVM of ACCT is a company which has successfully completed the Professional Vendor Member Application, including the Accreditation, process. The process includes a stringent review which determines an applicant's adherence to ACCT Accreditation

manager, Erik Marter, served on the Board of Directors of ACCT, and is the only certified ACCT professional inspector in Oregon. http://www.teamsynergo.com/our-story/; and http://www.acctinfo.org/?PVMList%20 (lasted visited May 20, 2016). Synergo conducts inspections of challenge courses according to ACCT standards. (Am. Compl. ¶ 28.)

In February 2012, Cavalry Church Tri-Cities ("Cavalry") constructed an "adventure course" on its Bar-M-Ranch property located in Richland, Oregon that included a Giant Swing. (Am. Compl. ¶ 6.) Calvary hired Synergo to inspect the Giant Swing after construction of the challenge course was complete. (Am. Compl. ¶ 11.) Synergo sent an employee to inspect the Giant Swing in June 2012. (Am. Compl.¶ 12.) During the inspection, Synergo discovered that the Cavalry and Bar-M-Ranch staffs were not trained to operate the swing. (Am. Compl. ¶ 16.) Synergo did not direct or recommend that Calvary close the Giant Swing until the operators of the swing were trained. (Am. Compl. ¶ 17.) If recommended by Synergo, Calvary would have closed the Giant Swing. (Am. Compl ¶ 19.)

During the week of July 15, 2013, Calvary hosted a summer camp at the Bar-M-Ranch. (Am. Compl. ¶ 20.) Almquist was a counselor at the summer camp. (Am. Compl. ¶ 22.) The camp director asked Almquist to demonstrate the use of the Giant Swing for the children attending the camp. (Am. Compl. ¶ 22.) Almquist agreed to do so and a camp employee, who was not trained to operate the Giant Swing, improperly connected her to the Giant Swing. Almquist fell 50 feet to the ground, paralyzing her from the waist down. (Am. Compl. ¶ 23.)

_____

Policies and Procedures and its good faith commitment to ACCT Standards. Successful completion of this process distinguishes a PVM from other vendors, identifying the PVM as having been found to be highly experienced and competent." http://www.acctinfo.org/?PVMList (last visited May 20, 2016).

## II. LEGAL STANDARD

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (*citing Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.* (*quoting Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true[,] [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citations and quotation marks omitted).

## III. DISCUSSION

ACCT moves to dismiss Almquist's Amended Complaint for lack of personal jurisdiction. ACCT argues that it lacks sufficient contacts with Oregon to permit the Court's exercise of either general or specific jurisdiction. Almquist acknowledges that general jurisdiction is not present here, but contends that the extent and nature of ACCT's contacts with Oregon permit the Court to exercise specific jurisdiction over ACCT.

### A.    Constitutional Personal Jurisdiction Standards

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendant]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Oregon law authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution.

*See* Or. R. Civ. P. 4L; *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) ("Oregon's long-arm statute confers jurisdiction to the extent permitted by due process."). The Court must therefore inquire whether its exercise of jurisdiction over ACCT "comports with the limits imposed by federal due process." *Daimler*, 134 S.Ct. at 753.

"Due process requires that defendants 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Specific jurisdiction is sometimes referred to as "case-specific" or "case-linked" jurisdiction, meaning it depends on an affiliation between the forum state and the underlying controversy, whereas general jurisdiction is sometimes referred to as "all-purpose" jurisdiction, meaning the court may assert jurisdiction over a defendant based on a forum connection unrelated to the underlying lawsuit (*e.g.*, domicile, place of incorporation, or principal place of business). *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014). Almquist argues that specific jurisdiction exists over ACCT.

The Ninth Circuit employs the following three-prong test to determine if a defendant has sufficient minimum contacts to be subject to specific jurisdiction:

(1)     The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

Page 5 - FINDINGS AND RECOMMENDATION

> (2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)     the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Picot*, 780 F.3d at 1211 (quotations and citation omitted). Plaintiff bears the burden of satisfying the first two prongs. *CollegeSource*, 653 F.3d at 1076. The burden then shifts to the moving defendant to present "a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

"The exact form of [a court's] jurisdictional inquiry depends on the nature of the claim at issue." *Picot*, 780 F.3d at 1212. For claims sounding in contract, courts in this circuit "generally apply a 'purposeful availment' analysis and ask whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id*. (*quoting Schwarzenegger*, 374 F.3d at 802). For claims sounding in tort, courts in this circuit "instead apply a 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id*. Almquist asserts a tort claim against ACCT. Accordingly, ACCT's motion to dismiss implicates only the purposeful direction test.

//

//

//

//

//

//

Page 6 - FINDINGS AND RECOMMENDATION

B.    **Specific Jurisdiction over ACCT**

1.    **Purposeful Direction Test**[2]

"A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."). Due process permits the exercise of personal jurisdiction over a defendant who "purposefully direct[s]" his activities at residents of a forum, even in the "absence of physical contacts" with the forum. *Burger King*, 471 U.S. at 476.

//

//

//

//

//

//

---

[2]    Almquist alleges a state negligence action against ACCT. As such, the "effects" test of *Calder v. Jones*, 465 U.S. 783, 788-89 (1984), is inapplicable to the Court's purposeful direction analysis in this case. *See Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (holding that "it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here" (citing *Calder*, 465 U.S. at 789)); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (emphasizing that *Calder* requires the defendant to individually and wrongfully target the plaintiff).

ACCT argues that it did not purposefully direct its activities toward Oregon.[3] By Declaration, Todd Domeck, Vice Chairman of the Board of Directors with ACCT, informed the Court that ACCT is a Delaware non-profit corporation with its principal place of business in Illinois. (Todd Domeck Decl. ¶ 3, Oct. 4, 2015.) ACCT has no office or registered agent in Oregon, and no employees who reside in Oregon. (Domeck Decl. ¶¶ 4-6.) Domeck also states that "ACCT was not consulted during the construction of the 'Giant Swing,'" nor did ACCT provide training for "any employees of the Bar-M-Ranch who were to be operators of the 'Giant Swing.'" (Domeck Decl. ¶¶ 9-10.)

In light of those facts, the jurisdictional analysis here turns on the extent to which ACCT, as a non-profit trade association, acted by way of its website and its certification of Synergo to create a presence in Oregon. In aid of the Court's analysis of ACCT's purposeful direction in Oregon, the Court relies on the uncontroverted allegations of the Amended Complaint, the Micah Henderson Declaration, and the Internet websites of ACCT and Synergo.[4] *See Boschetto*, 559 F.3d at 1015

---

[3] ACCT also argues that "there has been absolutely no evidence submitted that plaintiff, the camp, or the specific ride operator . . . ever had any interaction with ACCT . . . or that they in any way relied on any information promulgated by ACCT." (Def.'s Reply 10.) With regard to ACCT's claim that Almquist cannot show that ACCT directed activity toward the people involved in the accident, this argument is foreclosed by the Supreme Court's decision in *Walden*. 134 S. Ct. at 1122 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") With regard to ACCT's contention that Almquist has not shown reliance on the "information promulgated by ACCT," that evidence is relevant to the merits of Almquist's claim for negligence, and not to the jurisdictional question presently before the Court.

[4] ACCT argues that the websites are not authenticated and, thus, should not be considered by the Court. ACCT's and Synergo's websites were created and are maintained by Defendants in this case. Further, there is no challenge to the accuracy of the content presented on the websites. The parties dispute the sufficiency of ACCT's contacts with Oregon, including contacts made through ACCT's website. In the context of Almquist's *prima facie* showing on a motion to dismiss for lack of personal jurisdiction, the Court may consider the information provided by ACCT and Synergo on their commercial websites. *See, e.g., West Marine, Inc. v. Watercraft Superstore, Inc.*, No. C11-04459 HRL, 2012 WL 479677, at *10 (Feb. 14, 2012) ("Courts have taken notice of defendants'

("plaintiff need only make a *prima facie* showing of jurisdictional facts" (quotations and citation omitted)).

### a.    ACCT's Website

The Ninth Circuit has established a sliding scale analysis to consider how interactive an Internet website is for the purpose of determining its jurisdictional effect. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) ("In sum, the common thread, well stated by the district court in *Zippo*, is that the 'likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet.'") (*quoting Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); *see also ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (holding that a state may assert jurisdiction over a nonresident defendant "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable to the State's courts").

On its website, ACCT describes itself as "the world's leading and largest American National Standards Institute (ANSI) Accredited Standards Developer focused specifically and solely on the challenge course industry." http://www.acctinfo.org (last visited May 20, 2016). Through its website, ACCT represents that it "develops, refines, and publishes standards for installing, maintaining, and managing challenge courses; provides forums for education and professional development; and advocates for the challenge course and adventure industry." *Id*. ACCT's website is an interactive

---

websites or characteristics thereof when determining personal jurisdiction."); *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1021 (N.D. Cal. 2005) (taking judicial notice of defendants' website in personal jurisdiction analysis).

commercial website, and ACCT uses it to advertise and sell its services and merchandise. Specifically, individuals and businesses may purchase memberships and ACCT's standards book, apply and register for inspector certification courses and exams, and access challenge course related employment listings.

As of November 2015, ACCT had 2,524 total members, with 136 of those members located in Oregon. (Micah Henderson Decl. ¶ 7, Jan. 7, 2016.) As such, slightly over 5% of ACCT's worldwide members are located in Oregon. In addition, three of ACCT's 129 certified inspectors (2.3%) are located in Oregon. (Henderson Decl. ¶ 9.) During the period from June 1, 2014 through November 24, 2015, seven of the 200 standards (3.5%) sold by ACCT were delivered within Oregon. (Henderson Decl. ¶ 10.) ACCT attributes less than one percent of its 2015 annual dues to members located in Oregon. (Henderson Decl. ¶ 8.) Finally, as of November 12, 2015, two of the 100 job postings (2%) on ACCT's website were related to jobs in Oregon. (Henderson Decl. ¶ 11.) ACCT solicited and transacted these sales and services through its website.

Although the business ACCT conducts in Oregon is not overwhelming, the Court concludes that the nature and quality of ACCT's contacts with Oregon via its website are sufficient to satisfy the purposeful direction test. *See Tech Heads, Inc. v. Desktop Serv. Cntr., Inc.*, 105 F. Supp. 2d 1142, 1150-51 (D. Or. 2000) (finding personal jurisdiction proper where plaintiff presented evidence of a transaction involving an Oregon resident made through the defendant's interactive website); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891-892 (6th Cir. 2002) (holding that quantity and specifically a "'percentage of business' analysis" is not the proper test for personal jurisdiction; rather the proper test is "whether the absolute amount of business conducted . . . [in the forum state] represents something more than 'random, fortuitous, or attenuated contacts' with the

state") (*quoting Burger King*, 471 U.S. at 475); *Zippo Mfg. Co.*, 952 F. Supp. at 1126-1127 (recognizing that 3,000 subscriptions, or 2 percent of total subscriptions, was a sufficient basis for jurisdiction because the Supreme Court emphasizes the nature and quality of contacts with the forum rather than the quantity of contacts); *cf. Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 923 (D. Or. 1999) (declining to find personal jurisdiction based on an interactive website when there was no evidence of transactions with forum residents or evidence that the forum was targeted).

In any event, even if ACCT's reach into Oregon via its website was not sufficient, standing alone, to confer personal jurisdiction, the Court finds that ACCT's reach into Oregon went beyond mere solicitation of members and sales through its website. *See Brayton Purcell*, 606 F.3d at 1129 ("operating even a passive website in conjunction with something more – conduct directly targeting the forum – is sufficient to confer personal jurisdiction" (quotations and citation omitted)).

### b.    ACCT's Contacts Directed at Synergo

The Court finds that ACCT directly targeted Oregon through the following actions: ACCT's certification of Oregon-based Synergo as a PVM, advertising Oregon-based Synergo as a PVM (including recommending that consumers hire Synergo), and setting standards for the inspection of challenge courses, to which ACCT required Synergo to adhere. Specifically, ACCT established and promoted PVM designations for companies, including Synergo, that successfully complete the application and accreditation process, which can take up to 18 months to complete, and includes a site visit of one-to-three days in duration. http://www.acctinfo.org/page/PVMApplication (last visited May 20, 2016). ACCT describes the process as "a stringent review which determines an applicant's adherence to ACCT Accreditation Policies and Procedures and its good faith

commitment to ACCT Standards." *Id.* After the stringent review process and onsite visit, ACCT endorses the PVMs as "highly experienced and competent." http://www.acctinfo.org/?page=PVMList (last visited May 20, 2016). ACCT's website directs consumers to PVMs, including providing a link to Synergo's website. In turn, Synergo prominently displays its ACCT membership on its website, and advertises its ACCT-certified services, including inspection services in Oregon. http://www.teamsynergo.com (last visited May 20, 2016). Finally, ACCT has utilized Oregon-based Synergo personnel in the ranks of its leadership, including Synergo's owner, Marter (ACCT's Board of Directors), and Lindsay Wiseman James (ACCT's Chair of the Public Relations/Marketing Committee). http://www.acctinfo.org/?92; http://www.acctinfo.org/?page=140&hhSearchTerms=%22synergo%22 (last visited May 20, 2016).

The Court finds that ACCT's close relationship with and promotion of Oregon-based Synergo establishes purposeful direction into Oregon, especially when considered in conjunction with the reach of ACCT's interactive website to Oregon members and consumers. Accordingly, the first prong of the specific jurisdiction test (purposeful direction), is satisfied here.

### 2.    Arising out of or Relating to the Forum Activities

The second prong of the specific personal jurisdiction test requires a plaintiff to demonstrate that the claims arise out of, or are related to, defendant's forum-related activities. *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995). Courts apply a "but for" test – that is, a showing that the claims would not have arisen but for ACCT's contacts with Oregon. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001); *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("We rely on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction.").

Page 12 - FINDINGS AND RECOMMENDATION

Almquist contends that ACCT "sent Synergo its standards book in Oregon and understood that, as a certified ACCT professional inspector, Synergo would adhere to ACCT standards when it inspected challenge courses." (Pl.'s Opp. 7.) Almquist alleges that Synergo did adhere to ACCT standards and, as a result, she was injured. (Pl.'s Opp. 7-8.) Conversely, ACCT argues that Almquist's negligence claim is barred by Oregon statutes and administrative rules that regulate the duties owed, and by whom, when operating an amusement ride in this state. (Def.'s Reply 5-6.) ACCT contends that, under Oregon law, it does not owe a duty to Almquist. As such, her negligence claim cannot arise from ACCT's activities in the forum as a matter of law.

Whether Almquist may prevail on the merits of her negligence claim against ACCT is not before the Court at this time. For the purpose of the Court's jurisdictional analysis, Almquist's claims, as alleged, arise from ACCT's contacts with Oregon. Almquist has alleged that "but for" ACCT promulgating deficient safety standards, she would not have fallen and sustained injuries in Oregon. Thus, the contacts ACCT had with Oregon–i.e., certifying Synergo and allegedly setting inadequate course inspection standards to which Synergo was required to adhere–are also the conduct that give rise to Almquist's claims. Accordingly, the second prong of the specific personal jurisdiction test is satisfied here.

### 3.    Reasonableness

The third prong of the Ninth Circuit's specific personal jurisdiction test "requires a finding that assertion of jurisdiction is reasonable," meaning "the court must determine whether the assertion of personal jurisdiction would comport with traditional notions of 'fair play and substantial justice.'" *Unocal Corp.*, 248 F.3d at 925 (quoting *Int'l Shoe Co.*, 326 U.S. at 326). To determine reasonableness, courts analyze seven fairness factors:

(1) the extent of a defendant's purposeful interjection [into the forum]; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Burger King*, 471 U.S. at 476-77. No one factor is dispositive; a court must balance all seven. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993).

ACCT argues that the exercise of jurisdiction would be unreasonable because it has not reached out to Oregon in any way, defending in Oregon would be a burden since it is based in Illinois, and Almquist cannot show that alternative forums are unavailable. (Mot. Dismiss 12-13.)

### a.    Purposeful Interjection

As discussed above, ACCT purposefully directed itself into Oregon by maintaining an interactive commercial website and by certifying and promoting Synergo. The Court finds the purposeful interjection factor weighs in favor of Almquist.

### b.    Burden on ACCT

Next, the court considers ACCT's burden of litigating in Oregon. However, "unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F.3d 126, 128-29 (9th Cir. 1995). This is a high standard to meet, as courts have consistently held that modern technological advances reduce the burden of litigating in remote jurisdictions. *See, e.g., Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998); *Autobidmaster, LLC. V. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at * 11 (D. Or. May 19, 2015) ("modern technological advances greatly reduce the burden of litigating in remote jurisdictions").

ACCT is located in Illinois and does not have offices in Oregon. As such, there is some burden on ACCT to litigate in Oregon. However, ACCT does not contend the burden is so significant as to violate Due Process. The Court finds this factor weighs only slightly in favor of ACCT.

### c.    Conflict with Illinois Law

The parties agree this factor is neutral.

### d.    Oregon's Interest

Oregon has a significant interest in providing a forum for people who are tortiously injured while working in the state. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("It is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.") This interest extends to actions brought by nonresidents. *Id*.

Almquist was working in Oregon at the time of her injury. This factor weighs in favor of Almquist.

### e.    Efficient Judicial Resolution

The Court must also consider which forum can most efficiently resolve the dispute. To make this determination, the Court focuses on the location of the evidence and witnesses. *Caruth*, 59 F.3d at 129. The evidence and potential witnesses reside in Oregon, Washington, California, and Illinois. As such, one party must litigate in a foreign venue. While ACCT argues that its witnesses are located in "other states," it does not contend that its burden is greater than Almquist's were she forced to litigate elsewhere. In addition, this factor is "no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003).

Conversely, Almquist argues that almost all of the witnesses and evidence are located in Oregon or Washington. In addition, the accident occurred in Oregon, and the witnesses who ran the challenge course are likely residents of Oregon. Synergo is based in Oregon and performed its inspection of the Bar-M-Ranch in Oregon. The initial healthcare providers who treated Almquist are located in Oregon. Moreover, this action will go forward regardless of the outcome of the motion to dismiss because Synergo remains a defendant in this litigation. *See Core-Vent Corp.,* 11 F.3d at 1489 (finding that efficiency factor tipped in plaintiff's favor because the lawsuit would continue in the forum state with other parties); *see also Washington State University Foundation v. Oswald*, No. 3:99-cv-907-AS, 2000 WL 251661, at *3 (D. Or. Jan. 3, 2000) (exercising personal jurisdiction where the forum state "appeare[d] to be the only jurisdiction in which the parties may totally resolve the action").

This factor weighs in favor of Almquist.

### f.    Convenience and Effective Relief for Almquist

The Court next considers the importance of the forum to Almquist's interests in convenient and effective relief. If Oregon is not a proper forum, Almquist will be forced to litigate its claim against ACCT in Illinois or Delaware, which presents inconvenience for Almquist in light of her medical condition and her claim against Synergo that will be litigated in this Court.

Traditionally, courts have not given a lot weight to this factor. *See Ziegler*, 64 F.3d at 476. However, the factor must be considered and it weighs in favor of Almquist.

//

//

//

Page 16 - FINDINGS AND RECOMMENDATION

### g.    Existence of an Alternative Forum

Finally, the Court must determine whether an adequate alternative forum exists. Almquist acknowledges that Illinois and Delaware are appropriate forums.[5] This factor weighs in favor of ACCT.

### h.    Balance of the Reasonableness Factors

Applying the seven-factor test, the Court concludes that exercising personal jurisdiction over ACCT is reasonable, and comports with fair play and substantial justice. The first, fourth, fifth, and sixth factors weigh in favor of Almquist, although the sixth factor is given little weight. The second and seventh factors weigh in favor of ACCT. The third factor is neutral. Although some factors weigh in favor of ACCT, it did not present a "compelling case" that exercising jurisdiction in this Court is unreasonable. *See Boschetto*, 539 F.3d at 1016 ("If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable.")

All of the requirements for specific jurisdiction are satisfied here. Accordingly, the district judge should deny ACCT's Motion to Dismiss for Lack of Personal Jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the district judge should DENY ACCT's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 31).

---

[5]  At oral argument, counsel for Almquist informed the Court that the statute of limitations in both those forums likely foreclose the opportunity for Almquist to refile her negligence claim against ACCT in either Illinois or Delaware. The Court notes that savings statutes in both Illinois and Delaware may toll the statute of limitations, if this Court were to dismiss the claims against ACCT for lack of personal jurisdiction. *See* 10 Del. C. § 8118; 735 ILCS 5/13-217.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 20th day of May 2016.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge